**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-20000

Of Attorneys for Plaintiff


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION


| | |
|---|---|
| **GRANT YOAKUM** as personal representative of the estate of Nicholas Rodin | Case No. 2:23-cv-1 |
| | **COMPLAINT** |
| Plaintiff | Constitutional Violations |
| vs | Wrongful Death |
| **CROOK COUNTY** and **STEVEN HATCHER** | DEMAND FOR JURY TRIAL |
| Defendants | |

**1.**

**JURISDICTION, VENUE, AND THE PARTIES**

This Court has jurisdiction under 28 USC §§ 1331(a), 1343 & 1367 because plaintiff brings claims under federal law, and the federal law claims are so related to plaintiff's state law claims that they form part of the same case or controversy.

**2.**

Venue is proper in the District of Oregon under 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the District of Oregon and because defendants are subject to personal jurisdiction in the District of Oregon.

**3.**

Nicholas Rodin was 35 years old and unarmed when he was killed by defendants on February 4, 2022. Mr. Rodin was an Oregon resident. Mr. Rodin is survived by his mother and young child.

**4.**

Plaintiff Grant Yoakum is the appointed personal representative of the estate of Mr. Rodin according to letters of administration entered April 25, 2022 in the Jefferson County Circuit Court for the State of Oregon in case number 22PB02613. Plaintiff brings all claims available to the estate and its beneficiaries under state and federal law.

**5.**

Defendant Crook County is a political subdivision of the state of Oregon and responsible for the Crook County Sheriff's Office. As a local governmental entity, Crook County is a person under 42 USC § 1983.

**6.**

Defendant Steven Hatcher is an Oregon resident employed by Crook County as a deputy sheriff. All of the acts and omissions of Mr. Hatcher alleged in this complaint were within the scope of his employment with Crook County and the Crook County Sheriff's Office under color of Oregon state law.

**7.**

Service of this complaint for wrongful death within one year after Mr. Rodin's death satisfies the notice requirements of ORS 30.275.

**8.**

## FACTUAL ALLEGATIONS

On February 4, 2022 at approximately 1:40 pm, Mr. Hatcher killed Mr. Rodin by shooting Mr. Rodin twice in the torso. Mr. Rodin was unarmed and posed no threat to defendants or anyone else at the time of the killing.

**9.**

Mr. Rodin suffered from schizophrenia and bipolar disorder. At the time of his death, Mr. Rodin was experiencing a mental health episode triggered by or exasperated by Mr. Hatcher's initial use of force: Mr. Hatcher pointing a gun at Mr. Rodin and repeatedly threatening to kill Mr. Rodin.

**10.**

Prior to his death on February 4, 2022, Mr. Rodin had called Crook County 911 dispatchers to request a welfare check.

**11.**

Prior to his death, Mr. Rodin was known to Crook County as a person who suffered from mental illness.

**12.**

Prior to his death, Mr. Rodin was known to Mr. Hatcher as a person who suffered from mental illness.

**13.**

On February 4, 2022, one purpose and function of the Crook County Sheriff's Office was to protect the residents of Crook County.

**14.**

On February 4, 2022, one purpose and function of the Crook County Sheriff's Office was to serve the residents of Crook County.

**15.**

At approximately 1:30 pm on February 4, 2022, Mr. Rodin was walking down Maphet road, smiling and waving to his neighbors across the sage brush. Mr. Rodin was walking to meet his ride to town about a mile away from his home. Mr. Rodin did not pose any danger to anyone while walking down Maphet road. Mr. Rodin's neighbors described his demeanor as happy. Mr. Rodin had reason to be happy: his first baby was due to be born in the coming months.

**16.**

At approximately 1:30 pm on February 4, 2022, Mr. Rodin's friend, Ms. Hill, was listening to a police scanner and heard Mr. Rodin's name on the scanner. She called Mr. Rodin to let him know the police were looking for him; the two spoke as Mr. Rodin continued to walk down Maphet road. Mr. Rodin still did not pose any danger to anyone. However, he expressed concern to Ms. Hill that the police were actively stalking him.

**17.**

Mr. Rodin then encountered Mr. Hatcher as he pulled up in his sheriff's car. After briefly speaking with Mr. Rodin, Mr. Hatcher returned to his car but stalked Mr. Rodin as he rolled his car forward silently and without his sirens. Mr. Rodin, nervous of the police, kept walking forward and pulled out his phone. Suddenly, and without provocation, Mr. Hatcher leapt out of his car with his handgun drawn, behaving like a spaghetti-western cowboy. Mr. Hatcher pointed his handgun at Mr. Rodin in an act of force. He told Mr. Rodin to keep his hands visible and get on the ground. Mr. Rodin, characterized by his friends as a "clean-freak," knelt in the dirt of the sage brush and kept his hand visible. In one hand he held a cell phone and in the other a plastic Pepsi bottle. Mr. Hatcher saw both these objects in Mr. Rodin's hands and recognized them as the harmless objects they were. Mr. Hatcher kept his handgun trained on Mr. Rodin instead of deescalating.

**18.**

Mr. Hatcher did not have a reasonable basis to point his handgun at Mr. Rodin. There was no legal justification for Mr. Hatcher's initial use of force. Mr. Rodin was not posing a threat to Mr. Hatcher or anyone else and complied with Mr. Hatcher's orders. Even if Mr. Hatcher believed that Mr. Rodin had pulled a weapon out of his pocket while Mr. Hatcher was in his car, he very quickly and consciously observed that Mr. Rodin was holding a soda and a phone. At this stage, a reasonable and properly trained law enforcement officer would have deescalated the situation. Instead, Mr. Hatcher escalated and made death threats.

**19.**

While Mr. Rodin knelt in the dirt and visibly held his cell phone and Pepsi bottle in his hands, Mr. Hatcher held his handgun to Mr. Rodin's head and screamed, "You're goddamn right I'll kill you, keep your hands where I can see them!" Both of Mr. Rodin's hands were visible at the time that Mr. Hatcher made the death threat.

**20.**

While Mr. Rodin knelt in the dirt and visibly held his cell phone and Pepsi bottle in his hands, waiting for Mr. Hatcher to arrest him, Mr. Hatcher screamed, "Lay on the ground!", demanding that Mr. Rodin place his face in the dirty and abrasive sage brush.

**21.**

While kneeling on the ground, Mr. Rodin displayed behavior consistent with someone experiencing a mental health crisis. The subject of his conversation was erratic, changing rapidly. His hands, while clearly visible and not near any weapons, were moving about quickly. He was visibly stressed out.

**22.**

While Mr. Rodin discussed calling his girlfriend because he had a child on the way, and with his hands clearly visible to Mr. Hatcher, Mr. Hatcher again threatened to kill Mr. Rodin by shrieking, "I will blow your fucking head off!", while pointing the handgun at Mr. Rodin's head.

**23.**

During this entire interaction, Mr. Hatcher knew or should have known that Mr. Rodin was unarmed. Mr. Rodin was kneeling in a way that the outline of any dangerous object in his pocket would have been clearly visible to Mr. Hatcher. Had Mr. Hatcher taken a cursory glance at the outline of Mr. Rodin's pockets, he would have, and likely did, discover the truth: Mr. Rodin was unarmed and did not pose a threat to anyone.

**24.**

Mr. Hatcher told Mr. Rodin to show Mr. Hatcher his hands at least six times while Mr. Rodin's hands were already visible to Mr. Hatcher.

**25.**

Mr. Hatcher told Mr. Rodin to get on the ground at least eight times while Mr. Rodin was already kneeling on the ground, waiting for Mr. Hatcher to arrest him.

**26.**

After Mr. Hatcher escalated the situation by loudly and aggressively threatening to kill Mr. Rodin multiple times, Mr. Rodin became agitated. He grew impatient with Mr. Hatcher, who loomed over him with a handgun and repeatedly threatened to kill him. Mr. Rodin stood up and slowly walked around Mr. Hatcher, sarcastically asking Mr. Hatcher to shoot him. Mr. Hatcher's extreme and violent behavior baffled Mr. Rodin. Mr. Rodin responded to the disproportionate and unreasonable show of force by mocking Mr. Hatcher's extreme demeanor and pretending they were in a spaghetti-western shootout.

**27.**

While slowly walking around Mr. Hatcher, Mr. Rodin put his phone and Pepsi bottle in one hand. His empty hand went behind his back and out of Mr. Hatcher's view. Mr. Hatcher finally had his "justified shooting" moment; he could execute his stated desire to kill Mr. Rodin without consequence. Mr. Hatcher pulled the trigger twice, hitting Mr. Rodin in the torso with both shots. Mr. Rodin fell to the sage brush, where he eventually died.

**28.**

At all times during the encounter with Mr. Rodin, Mr. Hatcher lacked knowledge of facts sufficient to support an objectively reasonable belief that Mr. Rodin posed an immediate threat of bodily harm to any person.

**29.**

At all times during the encounter with Mr. Rodin, Mr. Hatcher lacked knowledge of facts sufficient to support an objectively reasonable belief that Mr. Rodin posed an immediate flight risk or would actively resist arrest.

**30.**

Nothing prevented Mr. Hatcher from deescalating, using less-lethal force, waiting for backup, or merely approaching Mr. Rodin and arresting Mr. Rodin. Mr. Hatcher was not prevented from attempting alternatives that did not involve killing Mr. Rodin. Mr. Hatcher did not attempt alternatives, either because he was not trained to use less-lethal force against a compliant, non-violent member of the public, or because he failed to implement his training.

**31.**

After Mr. Rodin fell into the sage brush, Mr. Hatcher did not render aid to Mr. Rodin. Instead, he left Mr. Rodin to bleed out in the desert, and left his body in the dirt for hours after he died. As a result of the acts and omissions of Crook County and Mr. Hatcher as alleged in this complaint, Mr. Rodin experienced pain, discomfort, mental distress, interference with normal life activities, and ultimately, death.

**32.**

**CLAIMS FOR RELIEF**

**– Claim One against Mr. Hatcher –**

**Constitutional Violations**

As alleged in this complaint, Mr. Hatcher is liable for the deprivation of Mr. Rodin's civil rights guaranteed by the Fourth Amendment to the United States Constitution and 42 USC § 1983 to be free from unreasonable searches and seizures, including excessive force and physical brutality. These Constitutional rights are long-standing and clearly established.

**33.**

Mr. Rodin had a protected liberty interest under the Fourth Amendment not to be subjected to an unreasonable seizure of his person by means of unnecessary or excessive force.

**34.**

Mr. Hatcher is liable because he is the state employee who, under color of law, shot Mr. Rodin, depriving Mr. Rodin of his Fourth Amendment rights to be free from unlawful search and seizure and his Fourteenth Amendment rights to not be deprived of life or liberty without due process. Mr. Hatcher declared himself Mr. Rodin's executioner without reason, justification, or due process.

**35.**

Mr. Hatcher lacked knowledge of facts sufficient to support an objectively reasonable belief that Mr. Rodin posed an immediate threat of bodily harm to any person. Mr. Hatcher was in possession of facts that would cause a reasonable law enforcement officer to believe that Mr. Rodin's behavior was attributable to emotional disturbance or mental illness.

**36.**

Mr. Hatcher either did not apply, or applied incorrectly, the *Graham* standard, when deciding to use force against Mr. Rodin by drawing a handgun and pointing it at him while threatening to kill him for not lying in the dirty sage brush, despite Mr. Rodin being compliant in every other way.

**37.**

Mr. Hatcher either did not apply, or applied incorrectly, the *Graham* standard, when deciding to use force against Mr. Rodin by shooting him twice when he was unarmed and posed no objective threat to any persons or property.

**38.**

As a direct and proximate result of Mr. Hatcher's constitutional violations, Mr. Rodin was deprived of his life. Under 42 USC § 1988, plaintiff is entitled to costs, including attorney's fees.

**39.**

**– Claim Two against Mr. Hatcher and Crook County –**

**Assault**

As alleged in this complaint, defendants intentionally placed Mr. Rodin in apprehension of an imminent harmful and offensive physical contact by purposely pointing a handgun at Mr. Rodin and repeatedly threatening to kill him in graphic, violent ways. Defendants intentionally attempted to engage in harmful or offensive contact with Mr. Rodin, and had the present ability to carry the intention into effect, causing Mr. Rodin emotional distress and interference with life activities.

**40.**

As a result of defendants' assault as alleged in this complaint, plaintiff is entitled to recover fair compensation for the emotional distress and interference with life activities suffered by Mr. Rodin caused by the assault, in an amount to be determined by the jury to be reasonable, including attorney fees under ORS 30.075.

**41.**

**– Claim Three against Mr. Hatcher and Crook County –**

**Battery**

As alleged in this complaint, defendants intentionally made harmful and offensive physical contact with Mr. Rodin, causing Mr. Rodin pain, discomfort, emotional distress, and interference with life activities.

**42.**

As a result of defendants' battery as alleged in this complaint, plaintiff is entitled to recover fair compensation for the pain, discomfort, emotional distress, and interference with life activities suffered by Mr. Rodin caused by the battery, in an amount to be determined by the jury to be reasonable, including attorney fees under ORS 30.075.

**43.**

**– Claim Four against Mr. Hatcher and Crook County –**

**Wrongful Death**

**44.**

As alleged in this complaint, Crook County failed to train, supervise, and discipline its deputies, including Mr. Hatcher, in following directives and policies that reasonably minimize the foreseeable threat of serious injury or death to members of the public. Because of this failure, it was foreseeable that Mr. Hatcher would engage in the unconstitutional conduct that ended in Mr. Rodin's death.

**45.**

Mr. Hatcher was negligent by failing to implement his training to safely apprehend an unarmed, nonviolent, and compliant Mr. Rodin.

**46.**

Mr. Hatcher was negligent by failing to use non-violent alternatives when engaging Mr. Rodin.

**47.**

Mr. Hatcher was negligent by failing to develop and execute a plan to minimize risk to Mr. Rodin.

**48.**

Crook County negligently failed to adequately train, supervise, and discipline their Sheriff's deputies to correctly apply and implement the *Graham* Standard.

**49.**

Crook County negligently failed to adequately train, supervise, and discipline their Sheriff's deputies to de-escalate, despite the foreseeable risk of serious harm to members of the public or officers.

**50.**

Crook County negligently failed to adequately train, supervise, and discipline their Sheriff's deputies not to escalate situations by repeatedly and aggressively threatening to kill a compliant, nonviolent, and unarmed civilian.

**51.**

Crook County negligently failed to adequately train, supervise, and discipline their Sheriff's deputies before sending them out into the community with lethal weapons, creating a foreseeable risk of harming members of the public with those lethal weapons. This failure to train, supervise, and discipline was foreseeable and unreasonable given the grave risk of severe harm to the public, and to Mr. Rodin.

**52.**

Defendants' negligent acts and omissions as alleged in this complaint led to a foreseeable and proximate consequence: a dead unarmed member of the public. Defendants' failure to exercise reasonable care as alleged in this complaint was the foreseeable and proximate cause of Mr. Rodin's death. As a result, plaintiff is entitled to recover economic and noneconomic damages for the pain, discomfort, emotional distress, and interference with life activities suffered by Mr. Rodin between the time defendants commenced their use of force and the time of Mr. Rodin's death, in amounts to be determined by the jury to be reasonable. Mr. Rodin's estate is also entitled to reasonable compensation for pecuniary loss and loss of society, companionship, and services to Mr. Rodin's parents and daughter, in an amount to be determined by the jury to be reasonable.

**53.**

**REQUEST FOR A JURY TRIAL**

Plaintiff respectfully requests a trial by a jury.

**54.**

**PRAYER FOR RELIEF**

Plaintiff requests a trial by jury, and a judgment against defendants fashioning an appropriate remedy and allowing fair compensation for economic and noneconomic damages in amounts to be determined by the jury to be reasonable, and allowing reasonable attorney fees and costs, and declaring defendants jointly and severally liable, and allowing interest, and any other relief the Court deems just and proper.

January 1, 2023

**RESPECTFULLY FILED,**

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiff
Law Office of Kelly D. Jones
kellydonovanjones@gmail.com
Direct 503-847-4329