**Michael Fuller, OSB No. 09357**
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **GRANT YOAKUM** as personal representative of the estate of Nicholas Rodin<br><br>                    Plaintiff<br><br>    vs<br><br>**CROOK COUNTY**<br><br>                    Defendant | Case No. 2:23-cv-00001-AB<br><br>**JOINT PROPOSED PRETRIAL ORDER** |

1. **LR 16-5(b)(1): Nature of the Action**

   The parties have not consented to trial by a magistrate judge. Trial will be by a jury.

   Plaintiff asserts a wrongful death negligence claim against defendant under ORS 30.020. Defendant denies all allegations of negligence and counters that Mr. Rodin's injuries and death were the sole cause and/or contributory fault of the decedent.

   The damages at issue are for pain and suffering damages from the time of injury until death, and for loss of companionship in amounts to be decided by the jury.

2. **LR 16-5(b)(2): Basis for Federal Jurisdiction**

   This Court has jurisdiction under 28 USC § 1367.

3. **LR 16-5(b)(3): Agreed Facts**

   3.1. At 4:44am, an individual identifying himself as Nicholas Rodin called 911.

   3.2. As a result of the 4:44am call, Crook County created notes in its CAD system that stated:

   > RP    CALLED 911
   >
   > SAYS HE DOESN'T KNOW ADDRESS, BUT HAS
   >
   > A WARRANT AND NEEDS TO GET PICKED UP
   >
   > SUBJ THEN DISCONNECTED

>PLOTTING ON SOUTH SIDE OFSE MAPHET,
>
>CLOSEST ADDRESS 2736 SE MAPHET
>
>RP CALLED BACK ON 91
>
>NICHOLAS RODIN 3/6/1986
>
>SAYS SOMEONE NEEDS TO PICK HIM UP OR HE'S GOING TO HURT SOMEONE
>
>WILL BE WALKING DOWN THE ROAD, WEARING JACKET AND BLUE JEANS
>
>SAYS HE HAS A PISTOL AND A KNIFE

**3.3.** The CAD notes stated that Mr. Rodin was 6'7" and 250 pounds.

**3.4.** The CAD notes stated that Mr. Rodin had a warrant for assault II.

**3.5.** Deputy Hatcher is 5'7" and weighed approximately 170 pounds at the time of the shooting of Mr. Rodin.

**3.6.** On the morning of February 4, 2022, Deputy Hatcher reviewed the CAD notes and discussed with another Deputy that the circumstances sounded like a possible ambush or a suicide by cop situation.

**3.7.** At approximately 1:36pm on February 4, 2022, Deputy Hatcher encountered Mr. Rodin at the intersection of SE Davis Loop and SE Maphet Road.

**3.8.** Deputy Hatcher assigned himself to the CAD call for the 4:44am call.

**3.9.** After Deputy Hatcher assigned himself to the call, Deputy Hatcher heard his partner Deputy Merkwan say that he was on his way to Deputy Hatcher's location.

**3.10.** Deputy Hatcher initiated contact with Mr. Rodin by stepping out of his vehicle and calling out Mr. Rodin by name. Deputy Hatcher did not hit record on his dash camera or body-worn camera at this time.

**3.11.** During this initial encounter between Mr. Rodin and Deputy Hatcher, Mr. Rodin identified himself as Michael Reese.

**3.12.** Deputy Hatcher broke contact with Mr. Rodin and returned to his patrol vehicle where he was able to determine Mr. Rodin had given a false name, Mr. Rodin was the individual he had contacted, and that Mr. Rodin had an active warrant for Assault II.

**3.13.** While Deputy Hatcher confirmed Mr. Rodin's identity, Mr. Rodin walked down the road away from Deputy Hatcher.

**PRETRIAL ORDER** – Page 4 of 13

3.14.  Deputy Hatcher followed Mr. Rodin in his patrol vehicle, while Mr. Rodin continued walking down Maphet Road.

3.15.  While Mr. Rodin was walking, he had a plastic soda bottle in his hand.

3.16.  While holding Mr. Rodin at gunpoint, Deputy Hatcher turned on his body-worn camera.

3.17.  Deputy Hatcher's body-worn camera accurately captures the events from the position of Deputy Hatcher's chest.

3.18.  At approximately 1:40pm on February 4, 2022, Deputy Hatcher shot Mr. Rodin twice in the chest.

3.19.  At approximately 1:42 pm Deputy Merkwan and Undersheriff Savage arrived at the scene.

3.20.  Deputy Merkwan and Undersheriff Savage had working tasers with them when they arrived at the scene.

3.21.  Mr. Rodin died at the scene.

4. **LR 16-5(b)(4): Claims and Defenses**

Plaintiff Contends:

In consideration of this Court's summary judgment order, plaintiff asserts a single claim for wrongful death negligence under ORS 30.020 based on unreasonable acts and omissions by Deputy Hatcher and Crook County that were each a cause of, and foreseeably resulted in, Mr. Rodin's injuries and death.

(a) Deputy Hatcher failed to keep a safe distance from Mr. Rodin while in his patrol car;

(b) Deputy Hatcher failed to wait for the other deputies to assist him before confronting Mr. Rodin on his own;

(c) Deputy Hatcher failed to consider, prepare, or use less-lethal weapons or alternatives before, and just after, exiting his patrol car to confront Mr. Rodin;

(d) Crook County failed to expressly instruct Deputy Hatcher to wait for other officers to arrive before confronting Mr. Rodin on his own;

(e) Crook County failed to provide Deputy Hatcher with working less-lethal weapons and alternatives to minimize the risk of deadly force being used against Mr. Rodin;

(f) Crook County failed to adequately train Deputy Hatcher to keep a safe distance from individuals like Mr. Rodin while in his patrol car;

(g) Crook County failed to adequately train Deputy Hatcher to wait for the other deputies to assist him before confronting individuals like Mr. Rodin on his own; and

(h) Crook County failed to adequately train Deputy Hatcher to consider, prepare, or use less-lethal weapons or alternatives in such circumstances.

<u>Defendant Contends</u>:

Defendant denies plaintiff's negligence specifications above. Defendant further asserts affirmative defenses that Deputy Hatcher was lawfully acting in self-defense and that but for one or more of Mr. Rodin's own acts and omissions, Mr. Rodin would not have died on February 4, 2022. Specifically, the County asserts Mr. Rodin's conduct in the following ways contributed to the circumstances leading to the shooting:

(a) Reporting that he was armed with a firearm and a knife and was a threat to hurt people if not captured when he may not have actually been so armed;

(b) Providing a false name to Deputy Hatcher during their first encounter in violation of ORS 162.385;

(c) Failing to obey lawful orders to keep his hands where Deputy Hatcher could see them;

(d) Failing to obey lawful orders to get on the ground and instead standing up and aggressively confronting Deputy Hatcher while indicating he was armed;

(e) Telling Deputy Hatcher that he was going to "shoot" him in violation of ORS 162.315;

(f) Quickly putting his hand out of view towards his waistband as if he were drawing a firearm multiple times in violation of ORS 162.315;

**PRETRIAL ORDER** – Page 7 of 13

(g) Repeatedly making statements and gestures designed to make Deputy Hatcher imminently fear for his life in violation of ORS 162.315;

(h) Not taking prescription medications meant to reduce his known tendencies to be aggressive, violent, and similarly erratic behavior; and

(i) Ingesting intoxicants, including but not limited to methamphetamine, which would make the erratic, illegal, negligent, and reckless behavior of Mr. Rodin even more likely to occur.

Plaintiff denies and objects to each of defendant's specifications of Mr. Rodin's alleged contributory negligence/comparative fault set forth above.

### 5. LR 16-5(b)(5): Plaintiff's Other Legal Issues

**5.1.** Defendant seeks to raise several specifications of Mr. Rodin's alleged contributory negligence under ORS 31.600 based on Mr. Rodin's alleged commission of intentional torts or crimes, which by definition is not negligence and, as a matter of law, cannot be compared with defendant's alleged negligence. *See Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) ("Plaintiff's theory for recovery is negligence, and he declined the trial court's not very veiled invitation to replead and pursue a different theory. However, the conduct that he alleges and describes cannot result in liability if only negligence is established. As a matter of law and fact, there is no such thing as a negligent fist fight."); *Shin v. Sunriver Preparatory Sch., Inc.*, 199

**PRETRIAL ORDER** – Page 8 of 13

Or. App. 352, 376 (2005) ("[I]ntentional misconduct is not "fault" subject to apportionment within the meaning of ORS 30.600 and ORS 30.605."); *id.* at 379 ("[W]e hold that, when the legislature changed "negligence" to "fault" in the comparative fault statutes in 1975, it intended to extend comparative fault to tortious conduct to which contributory negligence was a valid defense at common law. References to "fault" in ORS 31.600 and related statutes do not encompass intentional conduct to which contributory negligence was not a defense; apportionment of liability between negligent and intentional tortfeasors therefore is not permitted under those statutes."). *Inter alia*, defendant's specifications of comparative negligence (e), (f), and (g) all allege violations of ORS 162.315, which require proof of a defendant's "intentional" *mens rea* in resisting arrest. ORS 162.315 ("A person commits the crime of resisting arrest if the person *intentionally* resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.") (emphasis added). Additionally, the factual allegations to support specification (g) constitute common law assault: "repeatedly making statements and gestures designed to make Deputy Hatcher imminently fear for his life in violation of ORS 162.315." Because many of defendant's contributory negligence specifications are legally unviable, they cannot be presented to the jury.

**PRETRIAL ORDER** – Page 9 of 13

**5.2.** As indicated above, defendant intends to introduce supposed evidence of post-mortem testing indicating that Mr. Rodin was "intoxicated" at the time of the shooting to establish Mr. Rodin's use of drugs as an alleged specification of Mr. Rodin's contributory negligence. Defendant also seeks to establish Mr. Rodin's contributory negligence through allegations that purportedly he did not take prescribed medications. However, there is no admissible evidence in the record that Mr. Rodin was not taking his medications, and no expert testimony that medications would have changed his behavior. Similarly, while tests during Mr. Rodin's autopsy may have shown some levels of intoxicants in his system, this information, especially absent a qualified expert to interpret it, is not admissible for lack of foundation, and is prejudicial and likely to mislead the jury because the toxicology results alone are insufficient evidence to establish when Mr. Rodin took the intoxicants (presuming they were taken voluntarily or intentionally), whether he was still under the influence of the intoxicants at the time of his death, the amount Mr. Rodin purportedly took, or the effect that the intoxicants may have had on Mr. Rodin. Moreover, even if defendant could properly establish Mr. Rodin's intoxication and its medical effects on his physical and mental health during the relevant time period at issue, this information is nonetheless irrelevant because Deputy Hatcher

**PRETRIAL ORDER** – Page 10 of 13

did not suspect that Mr. Rodin had ingested drugs at the time of the incident. Hatcher Depo. 56:3–4 ("Q. Did you suspect that Mr. Rodin was on drugs? A. Not at the time.").

**5.3.** As indicated below, defendant argues that ORS 161.242(2)(b)'s mandate for an officer to consider alternatives to deadly force only applies after there is "a lethal force encounter." However, ORS 161.242(2)(b) is not restricted to only points in time after the need to use deadly force already occurs. Instead, ORS 161.242 plainly states that "**prior to using deadly physical force upon another person**, if the peace officer has a reasonable opportunity to do so, the peace officer shall . . . consider alternatives such as verbal de-escalation, waiting, using other available resources and techniques if reasonable, safe and feasible, or using a lesser degree of force" (emphasis added). The only potential temporal limitation to this Legislative mandate contained in the plain text of statute is that the officer had a **reasonable opportunity** to consider alternatives to using deadly force—not that an officer only needs to consider alternatives at the split second before shooting an individual, when it is often too late. Whether Deputy Hatcher had such a reasonable opportunity prior to killing Mr. Rodin is a fact only the jury can decide. Defendant's attempt to now insert its own favorable language into to the statutory text chosen by the

**PRETRIAL ORDER** – Page 11 of 13

Legislature in the aftermath of the George Floyd murder would contravene the plain text of the statute, mislead the jury, render ORS 161.242 (2)(a) meaningless, and otherwise constitute legal error.

## 6. LR 16-5(b)(5): Defendant's Other Legal Issues

**6.1**. There are several forms of damages and allegations in the operative Amended Complaint that would be irrelevant and prejudicial to the defense if presented at trial. These include allegations related to access of the family to the decedent's body immediately after the death.

**6.2.** Throughout the course of this case, and as alleged in the Amended Complaint, plaintiff appears prepared to present Mr. Rodin as suffering from a mental health crisis at the time of his encounter with Deputy Hatcher. Defendant contends there is no evidence that will be presented to support these theories and that plaintiff's counsel should not be allowed to mislead the jury with this type of inflammatory and unsupportable language.

**6.3.** Defendant anticipates Plaintiff's counsel to try and argue that ORS 161.242's requirement that an officer consider alternatives to lethal force applies to points in time prior to there being a lethal force encounter. This type of misrepresentation of the law should be addressed pre-trial.

**6.4**. Defendant anticipates being able to move for directed verdict at the close of plaintiff's evidence on the basis that plaintiff's theories of recovery will be either void of evidentiary support and/or will remain too speculative in nature to be presented to a jury.

**7. LR 16-5(b)(6): Proposed Amendments to the Pleadings**

Plaintiff's First Amended Complaint (ECF 21) is the operative pleading. Plaintiff has limited the specifications of his negligence claim as detailed above. Plaintiff and defendant stipulate and agree to the dismissal of Deputy Hatcher as a named defendant. The parties also agree that at all times material to plaintiff's claim, Deputy Hatcher was the employee of Crook County and was acting within the scope of his authority and employment with Crook County such that any negligence of Deputy Hatcher is the negligence of Crook County. *See* Joint Proposed Jury Instruction RE UCJI 30.01.

**DATED** this 11th Day of April, 2025

_____
Hon. Amy Baggio
United States District Judge

**Approved as to form:**

s/ Michael Fuller                           s/ Aaron Hisel
**Michael Fuller**                       **Aaron Hisel**
Of Attorneys for Plaintiff            Of Attorneys for Defendant

**PRETRIAL ORDER** – Page 13 of 13